By the Court.
This cause is submitted to the court upon the petition of the plaintiff and the cross-petitions of Carlton F. Humphrey and Amanda H. Carver, and¡,of Louise Sanders, et al.
The petition is filed by the plaintiff to obtain a construction of the will of Chauncey Humphrey, a determination of the rights of the respective cross-petitioners, and directions as to the distribution of the funds in plaintiff’s hands. The cross-petitions set up the several claims of the respective parties defendants to the fund.
The subject of controversy between the cross-petitioners is the three thousand dollars, by the ninthfitem of the will directed to be paid to the testator’s son Leonard; and the question in dispute is, whether this three thousand dollars constituted a part of the estate of Leonard at the time of his death, and was transmitted by his will; or did it pass, by the will of Chauncey Humphrey, to the children of his son Lucius, or their representatives. The solution of this question depends, it is conceded by counsel, upon the proper determination of the further question:
Does the direction of the ninth item]of the will, to pay Leonard three thousand dollars, read in the light of the other provisions of the will and circumstances surrounding the testator at its execution, constitute a present'legacy to Leonard, the *58 right to which vested at the testator’s death, with the right of its enjoyment merely postponed and contingent; or, does its vesting, as a legacy, depend upon the future contingency of Leonard being alive at the period of the happening of the event when the money is directed to be paid ?
The ninth item reads as follows:
“IX. — Should the child or children of my son Leonard die without lawful issue, then I direct my executors to pay to my said son Leonard the sum of three thousand dollars.” — It it immaterial whether we consider the word “then” as used in this item, as a designation of the time, or as equivalent to the words “in that event.”
To get the full meaning and correct construction of this item, it becomes necessary to know what are the other provisions of the will.
By the first item, the testator gives his wife the use of one-third of his real estate in lieu of dower.
By the second, he directs his executors to invest all the residue of his estate, real and personal, in real estate yielding annual rents, or in certain stocks bearing at least 6 per cent, interest, and to pay, of the rents and dividends, semi-annually, to his son Lewis, during his natural life, such sums as should be necessary and proper for his comfortable support and maintenance.
By the third item of the will he provides that*cmy surplus of such rents or dividends remaining after paying to Lewis, as provided in the preceding item, shall be paid, one equal half to the child or children that may be then living of Leonard, or their legal representatives, and the other half to the child or children that may then be living, of his son Lucius, or their legal representatives, — to be paid to their guardian until they arrived at full age.
“Item IV.' After the death of my wife, should she survive me, and after the death of my said son Lewis, then all my property then remaining, shall be paid over to the children of my said sons Leonard and Lucius, in the manner directed in the last foregoing clause of this will.”
“ Item VIII. In the case of the death of the child or children of my said son Leonard without lawful issue, then his, *59 her, or their share shall descend and go to the child or children of my said son Lucius, or their legal representatives — subject nevertheless, to the provisions in the ninth and tenth items of this will.”
Item IX is given above.
“ Item X. And should the child or children of my son Lucius die without lawful issue, then I direct my executor to pay to my son Lucius the sum of three thousand dollars.
“Item VI. I give to my son Lucius my pew in the Universalist Church in Columbus.”
“ Item VII. The taxes and expenses of executing this trust are to be paid by my executors.”
Counsel agree that the effect of the expression in the fourth item of the will, “in the manner directed in the last clause of this will,” is the same as if there was added to that item the following: That is to say, “one equal half to the child or children that may then be living of my son Leonard Humphrey, or their legal representatives, and the other half to the child or children that may then be living of my son Lucius Humphrey, or their legal reprentatives.”
The facts, so far as they are material, are admitted to be as follows:
1. The will was executed July 3d, 1851, and the testator died seventeen months thereafter.
2. His wife and his three sons Lewis, Leonard and Lucius, (who were his only children), were then living. Lewis, aged fifty-three, was an imbecile, and never married. Leonard, aged fifty-one, was then married, and had one child. Lucius was forty years of age, married, and had two children.
3. The wife died December, 1870.
Mary E., the only child of Leonard, died in 1869, without issue living. *
Lucius died in 1876, leaving his two children surviving him, his only issue.
Leonard died in 1879, leaving no child or children or issue thereof — but leaving his wife, to whom, by his will, he bequeathed all his, estate. It is claimed that the $3,000 in controversy passed under this will to his wife.
Lewis died in 1883.
*60 So it appears that if'Leonardjhad{a present ¡vested interest in the $3,000, as a legacy at the death of his father, with merely the right of enjoyment postponed ¡and contingent, it constituted part of his estate at his'j death,"and passed by his will to his widow. If he had not, then the fourth and eighth items of the will carried it to the children of Lucius, or their representatives; and whether he had or not, is the exact question here presented.
(a.) Generally, if a legacy be givenjwithout specifying the time when it is to be paid, it is due on the death of the testator ; and a general direction to pay a definitelrsum to a specified person without qualification, or time of payment indicated, is equivalent to a direct bequest.
Williams on Executors, star paging 1100, 1101, 1102.
(6.) But when a future time of payment of the legacy is defined by, or to be gathered from the will,^the legacy will be vested or contingent, according as upon construing the will it appears whether the testator meant to annex the time to the payment merely of the legacy, or to the gift of it; and the words used in that behalf, that is, whether it be a direct gift to the person or a direction to_ pay, become material, and sometimes determine the properjconstruction of the will. Id.
(c.) A bequest to a person, payable at the end of a certain determinate term, confers a vested interest immediately on the testator’s death, and is transmissible to his executors and administrators. Id.
(d.) But a bequest at a future definite period annexes the time to the substance of the legacy, and makes the legatee’s right to it. depend on his being alive at the time fixed for its payment; consequently, if the legatee happens to die before that period arrives, his personal representative will not be entitled to the legacy. Id.
(e.) Where there is no gift, but a direction to pay, or divide and pay, at a future or on a given event, the vesting will be postponed till after that time has arrived, or that event has happened, unless from particular circumstances a contrary intention is to be collected. Id. 1108; 30 Ohio St. 288; 19 Id. 30; 38 Id. 242.
*61 (/.) Where the interest or income only is given to a person for life or some other period, and at the decease of the first taker, or the end of the period, the capital is bequeathed to another by direction to pay only, and it appears from the context of the will that no interest in the capital was intended to pass till the determination of the life estate, or other particular period, the gift of the income and the gift of the capital are considered as distinct gifts, and when the legatee of the principal dies during the peceding period, the legacy does not vest, and, of course, is not transmissible. Id.
It is a general rule in the interpretation of wills, that courts favor that construction under which estates will vest at the testator’s death ; yet this, like all other rules of construction, will be controlled by the intention of the testator as gathered from the whole will. 38 Ohio St. 255.
Applying these well settled rules with the view of ascertaining and giving effect to the intention of Chauncey Humphrey as expressed in his will, the first and leading purpose, clearly apparent from the will, is, that the capital of his estate should not pass under his will until after the death of both his wife and Lewis, and then only to legatees then answering the description.
This is apparent from the second item, by which he directs his executors to invest all his property in real estate yielding annual rents, or stocks bearing interest, and the payment to his son Lewis, semi-annually, during his life, of such portion as is therein provided for. And by the third item, which directs the surplus of such income to be paid to the children of his sons Leonard and Lucius, or their legal representatives, during the same period ; that is, during the natural life of Lewis. And by the seventh item, which directs that all taxes and expenses-of executing the trust be paid by his executors. And by the fourth item, which expressly provides that after the death of his wife, and after the death of his son Lewis, then his property shall be paid over to the children of Leonard and Lucius, in the manner directed by the third item. Upon this one idea the whole will is in harmony.
From the eighth item, it appears that the testator uses the term “ legal representative ” in the third item, in the sense of *62 “issue;” for, he therein provides that in case of the death of the child or children of his said son Leonard, without lawful issue, then his, or her, or their shares shall go to the child or children of his said son Lucius, or their legal representatives, etc. So, in substance, during the life of Lewis, the surplus of the income not needed for Lewis’ support, is to be paid to the children of his sons Leonard and Lucius, or such of them as may then be living, and the issue of such as may be dead, leaving issue then living — that is, living at the time that the surplus becomes payable; and after Lewis’ death, the capital is to be paid in the same way, and only such children or issue should share in the division of the capital as answered the de-. scription and sustained the relation required when the time for payment arises, viz.: Only such as were living at the death of Lewis.
In other words, the interest and income only being devised and bequeathed for the life of Lewis, and the capital by simply a direction to pay after his death to the children and issue then living — the bequest of the capital is contingent, and does not vest until Lewis’ death, and then only in such as may be then living, and who, therefore, then take by the terms of the bequest.
Richey v. Johnson, 80 Ohio St. 288, is an authority directly in point. See also 38 Ohio St. 242.
Leonard’s only child having died without issue, before Lewis died, she at the time of her death had no vested interest, and could transmit, none.
Thus far, there is no disagreement between counsel who have argued the case.
If the conclusion just reached, and the ground upon which it is placed, is correct, it is difficult to see how Leonard became vested with any interest in the $3,000. He died before Lewis. None of the capital was to or did vest anywhere during Lewis’ life. The gift of the capital is a gift at his death, not a gift in prsesenti, payable at his death.
No interest vested even in the children of Lucius or Leonard until after Lewis’ death ; and the gift of the $3,000 is only by direction to pay, and that is made to depend upon the áddi *63 tional contingency that at Lewis’ death there should be no child of Leonard, or issue of such child, living. The legacy did not and could not vest until the time of payment, or the event happened, on which the money is directed to be paid.
The remark of Scott, J., in Richey v. Johnson, 30 Ohio St. 288, becomes applicable here :
“ We are to look to the whole will, and ascertain not only what the testator has said, but what he has forborne to say.”
Looking at the whole will, it is reasonably certain that the testator meant to preserve the capital of the estate during Lewis’ life, for the purpose, chiefly, of providing him adequate support during his life; that
The income only should vest in his life-time ; that
The capital should vest in the child or children of Leonard and Lucius living at the time of Lewis’ death, or the issue then living of such as should be dead, and in them, only.
7 Met. 377,481, 485; 7 Leigh 13; 5 Bro. Cas. 388.
It is significant that the direction to pay the $3,000 in the event his child or children, and their issue, should all die before Lewis, is personal to Leonard, and that the testator omitted to provide that he or his representatives should take in the event his only child and its issue should die before Lewis'.’
Such contingency does not seem to have occurred to the testator; and it is probable that he contemplated, by the ninth item, the death of Leonard’s child or children leaving no issue, after the death of Lewis and before the death of Leonard ; in which event Leonard was to have $3,000 out of the share of which his child or children, or the issue thereof, should become and die seized.
As we have seen, no interest in the moiety of the capital was to become vested in Leonard’s child or children, or their issue, during the life of Lewis, and Leonard’s right to the $3,000, out of that moiety, was contingent upon there being no such child, children, or issue, living at Lewis’ death. The possibility of such child, children, or issue, who might take that moiety, did not, therefore, become extinct during the joint lives of Leonard and Lewis; and the bequest of $3,000 *64 being simply by direction to pay Leonard only on the failure of such child, children, or issue, after Lewis’ death, it would seem necessarily to follow that so long as Lewis lived, no interest in the $3,000, to be paid out of that moiety, could vest-in Leonard;,and Leonard having died before Lewis, no interest therein in fact ever did vest in him.
L. English and R. H. Platt, for plaintiff.
Harrison, Olds & Marsh, for defendant.
The vesting in the children of Lucius; or their issue, of the moiety that would otherwise have gone to Leonard’s child, children, or their issue, if any of them had survived Lewis, was subject to the qualification that $3,000 of it should go to Leonard himself, if then living. But Leonard not being alive at the happening of the contingency, and the gift being only by a direction to then pay him,, and the time thus annexed to the gift, as well as the payment of it, to Leonard, he never acquired a vested interest in it, and the qualification of the gift of that moiety to Lucius’ children, and their issue was removed, and they therefore take that moiety free from and discharged of that qualification.
On the whole will, we are of opinion the $3,009 never became a vested legacy in Leonard. It follows that he did not die seized of any interest in it, and it did not pass by his will; but that the children of Lucius and their issue, take the whole of that moiety.
Judgment accordingly.
(Affirmed by the Supreme Court, without report, June 11, 1889.)